UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **IMI HUNTSVILLE, LLC,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **Civil Action No. CV-13-S-1071-NE** |
| **THE HERITAGE CLUB, INC.,** ) | |
| ) | |
|     **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This action arises from a lease agreement between plaintiff, IMI Huntsville, LLC ("IMI"), and defendant, The Heritage Club, Inc., for restaurant space in Huntsville, Alabama.[1]  In its complaint, IMI asserts a claim for breach of contract and requests that this court grant a landlord's lien against the Heritage Club's personal property remaining on the leased premises.[2]

Federal jurisdiction is based on the diversity statute.  28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between the plaintiff and the defendant,[3]

---

[1] *See* doc. no. 1 (Complaint) ¶ 6.

[2] *Id.* ¶¶ 30, 35.

[3] The Heritage Club is a corporation incorporated in Alabama, with its principal place of business in Alabama.  Doc. no. 1 (Complaint) ¶ 1.  IMI is a limited liability company.  For the purposes of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).  The sole member of IMI is Institutional Mall Investors, LLC.

and the amount in controversy exceeds the jurisdictional threshold of $75,000, exclusive of interest and costs.[4]

IMI has moved for summary judgment in its favor on both of its claims. Despite this court's order stating that the Heritage Club's response to IMI's motion was "due on or before February 14, 2014,"[5] the Heritage Club never responded.[6] Even so, this court cannot enter summary judgment by default. The Eleventh Circuit has observed that:

> the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." [*United States v. One Piece of Real Property Located at 5800 SW 74th Ave.,* 363 F.3d 1099,] 1101 [ (11th Cir. 2004) ].... Fed.R.Civ.P. 56(e) provides that where "'the adverse party does not respond, summary judgment, *if appropriate,* shall be entered against the adverse party.'" *Id.* at 1101 (quoting Fed. R. Civ. P. 56(e)) (emphasis in the original).

*Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004) (alterations supplied).

---

The members of Institutional Mall Investors, LLC are Miller Capital Advisory, Inc. (citizen of Illinois), MCA Mall Investors LLC (citizen of Delaware and Illinois), and the California Public Employees' Retirement System (citizen of California). Doc. no. 1 (Complaint) ¶ 2.

[4] *See, e.g.*, doc. no. 1 (Complaint) ¶ 34.

[5] Text order entered on January 24, 2014.

[6] The Heritage Club did file an answer to the complaint; it simply failed to respond to the motion for summary judgment. *See* doc. no. 6 (Answer).

Therefore, following consideration of the pleadings and of plaintiff's brief and evidentiary submissions, this court concludes that summary judgment is due to be entered in favor of plaintiff.

## I.  STANDARD OF REVIEW

Summary judgment should be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings, and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, to designate specific facts showing that there is a genuine issue for trial. *See id.* at 324. Any reasonable dispute or doubt as to any material fact, and all justifiable inferences, are resolved in favor of the non-moving party. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The materiality of a fact is

determined by the substantive law at issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute is one in which a reasonable jury could find for the non-moving party. *Id*.

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

## II.  FACTS

The Heritage Club entered into a lease agreement with Huntsville Shores, LLC, on March 7, 2010, by the terms of which it agreed to rent 10,137 square feet of restaurant space located at "The Bridge Street Town Centre" in Huntsville, Alabama.[7]

---

[7] Doc. no. 14 (Summary Judgment Brief), at 1 (citing doc. no. 1-1 (Exhibit A, Part 1), at ECF 2). "ECF is the acronym for Electronic Case Filing, a filing system that allows parties to file and serve documents electronically." *Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009). Bluebook Rule 7.1.4 allows citation "to page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D. D.C. 2011) (citing The Bluebook: A Uniform System of Citation R.B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.* eds., 19th ed. 2010)). Even so, the Bluebook recommends "against citation to ECF pagination in lieu of

Huntsville Shores, LLC, assigned the lease to IMI on May 18, 2012.[8]

In 2011, the Heritage Club hired a contractor, W.H. Smith Jr. Company, Inc. ("W.H. Smith"), to make improvements to the leased space (the "Premises").[9] The Heritage Club failed to compensate W.H. Smith and its subcontractors (*e.g.*, Brooks Electrical Installation, Inc. ("Brooks"), and Quality Glass Co., Inc. ("Quality Glass")) for work performed.[10] Subsequently, all three companies perfected mechanics' liens against the Premises.[11] Those liens are recorded with the Office of the Judge of Probate of Madison County, Alabama, in the amounts of $124,980.63, $24,777.54, and $18,085.00, respectively.[12] All three companies have filed separate suits against IMI for enforcement of their liens.[13]

The Heritage Club's failure to keep the Premises free from mechanics' liens constituted a breach of the lease agreement, which provides that the Heritage Club "shall keep the Premises and the Project free and clear of all mechanics' liens and

---

original pagination." *Wilson*, 772 F. Supp. 2d at 257 n.5. Thus, unless stated otherwise, this court will cite to the original pagination in the parties' pleadings. When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

[8] *See* Doc. no. 1-3 (Exhibit C), at ECF 2.

[9] Doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 3.

[10] *Id.* at 4.

[11] *Id.*

[12] *Id.*

[13] *Id.*

other liens."[14]

By the terms of the lease, the Heritage Club agreed to pay an annual rent of $263,562, payable in equal monthly installments of $21,963.50, for the first year of the lease term, and an annual rent of $334,521, payable in equal monthly installments of $27,876.75, for the second year.[15]  Thereafter, the annual rate would increase by three percent each year.[16]  The lease also provided that, upon default by the Heritage Club, the landlord was entitled to terminate the lease, accelerate the remaining rent due, and recover possession of the Premises.[17]

The Heritage Club fell behind on its monthly rental payments to IMI.[18]  IMI sent a letter to the Heritage Club on August 13, 2012, demanding full payment of outstanding charges, in the amount of $185,628.39, within ten days.[19]  The letter warned the Heritage Club that failure to pay would constitute a breach of the lease.[20]  The Heritage Club did not pay the amount owed within the ten days and, thus, was

---

[14] Doc. no. 1-1 (Exhibit A, Part 1 (Lease)), at 15.

[15] *Id.* at 5–6.

[16] Doc. no. 14 (Summary Judgment Brief), at 2 (citing doc. no. 1-1 (Exhibit A, Part 1 (Lease)), at 5–6).

[17] Doc. no. 1-1 (Exhibit A, Part 1 (Lease)) at 27.

[18] Doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 5.  IMI has not provided any more specifics regarding the Heritage Club's failure to pay rent, *e.g.*, what month(s) Heritage Club failed to pay rent.

[19]  Doc. no. 1-4 (Exhibit C), at 1.

[20] *Id.*

in default as of August 23, 2012.[21]

IMI, in a letter sent to the Heritage Club on September 14, 2012, terminated the lease, accelerated the remaining rent, and demanded possession of the Premises within ten days.[22] The Heritage Club neither made the payments nor delivered possession of the Premises.[23]

IMI then filed an unlawful detainer action against the Heritage Club in the District Court for Madison County, Alabama, on November 9, 2012, seeking a court order restoring possession of the Premises to IMI.[24] That court restored possession to IMI in a consent judgment dated January 28, 2013.[25] Upon recovering possession, IMI found that the Heritage Club had left behind personal property on the Premises, including furniture, fixtures, and equipment.[26] The section of the lease governing personal property on the Premises provides that

> Tenant grants to Landlord, to secure performance of Tenant's obligations hereunder, a security interest in all equipment, fixtures, furniture, improvements, and other personal property of Tenant now or

---

[21] *See* doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 5; doc. no. 14 (Summary Judgment Brief), at 3.

[22] Doc. no. 1-5 (Exhibit D), at 1.

[23] Doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 5.

[24] *Id.* (referencing doc. no. 15-2 (Exhibit B (Consent Judgment)), at 1–2).

[25] Doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 5; doc. no. 15-2 (Exhibit B (Consent Order)), at 1–2.

[26] *See* doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 6.

hereafter situated on the Premises, and all proceeds therefrom . . . .[27]

As of January 28, 2013, the Heritage Club owed IMI $344,387.94 in unpaid rent, "grease trap reimbursement, property tax reimbursement, and insurance."[28]

The lease provides that the prevailing party, whether landlord or tenant, in an action against the other, is entitled to "reasonable attorney's fees and costs incurred therein."[29] IMI incurred attorney's fees and costs in the amounts of $64,242.11 and $2,223.31, respectively, during its efforts to recover possession of the Premises, collect payments from the Heritage Club, and defend against the liens asserted by W.H. Smith, Brooks, and Quality Glass.[30]

### III.  BREACH OF CONTRACT

**A.    Breach of Contract**

The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105–106 (Ala. 2002) (citing *State Farm Fire and Casualty Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)).

---

[27] Doc. no. 1-1 (Exhibit A, Part 1 (Lease)), at 28 (alteration supplied).

[28] Doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 6.

[29] Doc. no. 1-1 (Exhibit A, Part 1 (Lease)), at 29.

[30] Doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 6; doc. no. 15-3 (Exhibit C (Affidavit of Benjamin L. McArthur)), at 4.

The Heritage Club does not allege in its answer that the lease agreement lacks the requisite elements of a valid contract and, indeed, the lease appears to be a valid contract.[31]  With respect to the second element, the Heritage Club does not allege that IMI failed to perform its obligations under the lease, and there is no indication in the record that IMI failed to do so.[32]  With respect to the third element, the Heritage Club clearly did not perform its obligations under the contract: *e.g.*, the company did not pay all rent due;[33] did not cure that nonpayment;[34] and allowed mechanics' liens to be recorded against the Premises and property therein.[35]   Finally, with respect to the fourth element, IMI has suffered damages in the amount of $344,387.94, in the form of the Heritage Club's unmet rent obligations, "grease trap reimbursement, property tax reimbursement, and insurance."[36]  Accordingly, IMI has established all four elements of its breach of contract claim against the Heritage Club, and its motion for summary judgment on this claim is due to be granted in its favor.

### IV.  LANDLORD'S LIEN

IMI contends that it is entitled to both a statutory lien, pursuant to Alabama

---

[31] *See* doc. no. 6 (Answer) ¶¶ 6, 8.

[32] *See id.*

[33] Doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 5.

[34]  *See id.*; doc. no. 14 (Summary Judgment Brief), at 3.

[35] *See* doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 4.

[36]  *See* doc. no. 14 (Summary Judgment Brief) at 6–7 (citing doc. no. 15-1 (Exhibit A (Affidavit of Rochelle Allgood)), at 6).

Code § 35–9–60 (1975), and a contractual lien pursuant to the lease.[37] The Eleventh Circuit has held that,

> Under Alabama law, the statutory lien provided by Ala. Code § 35–9–60 is read into and becomes a part of every lease as a matter of law. *In re Scruggs*, 205 F. 673, 675 (S.D. Ala. 1913). Section 35–9–60 provides the landlord with "a lien on the goods, furniture and effects belonging to the tenant . . . ." As the district court correctly noted, the Supreme Court of Alabama has held that a lease may provide a landlord with a contractual lien in addition to the statutory lien. *See Alabama Butane Gas Co v. Tarrant Land Corp.*, 244 Ala. 638, 15 So. 2d 105, *reh'g denied*, 244 Ala. 646, 15 So. 2d 111 (1943). In order to create a contractual landlord's lien, "it must clearly appear that the parties intended that the property should stand as security for the particular debt." *Montana v. Alabama Fishermen's & Hunters' Ass'n,* 226 Ala. 303, 146 So. 805, 807 (1933). Thus, the issue of whether a landlord has a contractual as well as a statutory lien is a matter of discovering the parties' intent.

*Dallas v. S.A.G., Inc.*, 836 F.2d 1307, 1309 (11th Cir. 1988).

The lease provides that the landlord holds a lien "[i]n addition to all statutory landlord's liens granted under applicable law."[38] IMI asserts that this provision, the so-called "contractual lien," is separate from the lien provided by statute.[39] In its complaint, however, IMI claims a landlord's lien only "pursuant to Ala. Code § 35-9-60, *et seq.*"[40] The complaint neither invokes a contractual lien nor alludes to one.[41]

---

[37] *See* doc. no. 14 (Summary Judgment Brief), at 13.

[38] Doc. no. 1-1 (Exhibit A, Part 1 (Lease)), at 28 (alteration supplied).

[39] Doc. no. 14 (Summary Judgment Brief), at 13.

[40] Doc. no. 1 (Complaint) ¶ 35.

[41] *Id.*

Therefore, only the statutory lien provision will apply in this case.

The principal difference between the lease provision and the statute is that the lease provision grants a lien to "secure performance of Tenant's *obligations*,"[42] whereas the statute more narrowly grants a lien "for *rent*." Ala. Code § 35–9–60 (1975) (emphasis supplied). The lease imposes several obligations in addition to the obligation to pay rent, and IMI now seeks damages for those obligations.[43] Because only a statutory lien is available in this action, however, IMI is entitled to a landlord's lien only insofar as enforcement of the lien compensates IMI for *rent*.

## V. ATTORNEY'S FEES

IMI contends that it is entitled to attorney's fees under the following provision of the lease:[44]

### ARTICLE 22.

### ATTORNEYS' FEES

If either Landlord or Tenant shall institute any action or proceeding against the other relating to the provisions of this Lease, or any default hereunder, the unsuccessful party in such action or proceeding shall pay to the successful party the reasonable attorneys' fees and costs incurred therein by the successful party.[45]

---

[42] Doc. no. 1-1 (Exhibit A, Part 1 (Lease)), at 28 (emphasis supplied).

[43] For example, the Lease provides that Heritage Club is obligated to keep the Premises free from mechanics' liens. *Id.* at 15.

[44] Doc. no. 14 (Summary Judgment Brief), at 11–13.

[45] *Id.* at 29.

Pursuant to the above provision, IMI seeks attorney's fees and costs incurred during its defense against the three liens and during its unlawful detainer action.[46] IMI is not entitled to those fees, however. First, the lease provision includes only actions brought *by* the landlord or tenant "*against the other*."[47] The three lien actions are not subject to this provision, because they were not actions brought by IMI or by the Heritage Club against the other. Second, the lease provision permits recovery of only the attorney's fees and costs *incurred therein* — *i.e.*, in the action being litigated. IMI therefore cannot, in this action, recover attorney's fees and costs incurred in the separate unlawful detainer action. Accordingly, IMI is entitled to seek only the attorney's fees and costs incurred in the instant action.

"As a general rule, when a party to a contract has been adjudicated as being in default, provisions in a contract providing for the payment of reasonable attorney's fees will be upheld." *King v. Calvert & Marsh Coal Co., Inc.*, 362 So. 2d 889, 892 (Ala. 1978). In awarding attorney's fees, however, courts must decide: "(1) Whether the party claiming the right to attorney's fees, pursuant to a contract, acted reasonably in employing counsel; and, (2) Were the services, for which attorney's fees are claimed, reasonable under the circumstances." *Id.* (citing *Kennedy v. Sorsby*, 95 So.

---

[46] *Id.* at 11.

[47] Doc. no. 1-1 (Exhibit A, Part 1), at 29 (emphasis supplied).

891 (Ala. 1923)).

In a case where a tenant breached a lease, the Alabama Supreme Court held that "testimony from attorneys who testified as to the reasonableness of attorney fees" constituted "sufficient evidence in the record to support" an award of those fees. *Watts Building Corp. v. Schoel, Ogle, Benton, Gentle, and Centeno*, 598 So. 2d 832, 835 (Ala. 1992).

IMI requests attorney's fees in the amount of $64,242,11, and costs in the amount of $2,223.31, for matters "related to the default."[48] IMI supports this request with the testimony of attorney Benjamin L. McArthur.[49] Mr. McArthur analyzes the reasonableness of IMI's attorney's fees, including fees that this court has found it cannot award, as a lump sum.[50] Because IMI has not requested attorney's fees specifically incurred *during this action*, this court cannot, at this time, award attorney's fees to IMI.

## VI.  CONCLUSION AND ORDERS

In accordance with the foregoing, it is ORDERED, ADJUDGED, and DECREED as follows: IMI's motion for summary judgment is GRANTED, and judgment is entered in IMI's favor on all of the claims asserted in its complaint. IMI

---

[48] Doc. no. 15-3 (Exhibit C (Affidavit of Benjamin L. McArthur)), at 4.
[49] *Id.* at 4-6.
[50] *Id.* at 5.

is GRANTED a landlord's lien on all of the Heritage Club's personal property remaining on the Premises, pursuant to the limitation set out more fully in Part IV. Accordingly, it is CONSIDERED, ORDERED, and ADJUDGED that IMI Huntsville, LLC, have and recover of defendant, The Heritage Club, Inc., the sum or amount of Three Hundred Forty Four Thousand, Three Hundred Eighty Seven and 94/100ths Dollars ($344,387.94), together with the costs of this action.

IMI is ORDERED to submit a detailed itemization of all attorney's fees and costs incurred *during this action*, along with an affidavit as to the reasonableness of the fees and costs, no later than the close of business on Thursday, August 28, 2014.

DONE and ORDERED this 25th day of August, 2014.

_____
United States District Judge